JOHNSON, Justice,
dissents.
Ill respectfully dissent from the majority opinion, which finds no abuse of the trial court’s discretion in denying Vanessa Gathen’s relocation request.
In deciding what serves the best interests of these two children, the majority of this Court has adopted the parochial attitude that because Andru and Evan have resided predominantly within the State of Louisiana, they would be adversely impacted if they relocate. The majority focuses on the boys’ close ties to the father’s extended family, friends and school. In my view, the majority overemphasizes these factors, and fails to give sufficient weight to the boys’ parental relationships and resulting benefits from relocation. The father, who opposed relocation, is not the primary caretaker of these boys, and spends only a few days a month with his sons. Thus, the practical effect of denying the mother’s relocation request in this case does not so much preserve a close father-child relationship, but only serves to force the primary caretaker (the mother) to stay in Louisiana to care for these children.
The mother has unquestionably demonstrated that the family would benefit financially with this move. And, I have no doubt the schools in Washington state are as good as those in Louisiana. Moreover, the record establishes that the mother has | ¡>been the primary caretaker of these boys. Rather than focusing on each parent’s relationship to the boys, the majority, like the trial court, places too much emphasis on the boys’ relationship with the father’s extended family. In so doing, I find the majority opinion violates the spirit of the Supreme Court’s decision in Troxel v. Granville, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). In Troxel, paternal grandparents, following the death of their son, filed suit to obtain increased court ordered visitation with their grandchildren pursuant to a Washington statute. Troxel, 530 U.S. at 60-61, 120 S.Ct. 2054. The mother, Granville, believed the amount of visitation sought by the grandparents was excessive. Id. In a plurality opinion, the Court held that the Washington state statute, which essentially allowed any person to be awarded visitation at any time if the court determined it would be in the children’s best interest, to be unconstitutional as applied to the facts of the case. The Court reasoned that the trial court, in *14 considering the grandparents’ petition for visitation, placed on “the fit custodial parent, the burden of disproving that visitation would be in the best interest of her daughters,” thereby “directly contravening] the traditional presumption that a fit parent will act in the best interest of his or her child.” Id. at 69, 120 S.Ct. 2054. “In that respect, the court’s presumption failed to provide any protection for Gran-ville’s fundamental constitutional right to make decisions concerning the rearing of her own daughters.” Id. at 69-70, 120 S.Ct. 2054. Troxel supports my belief that parents have a fundamental right to make decisions about raising their children, and the primary parental relationship cannot be outweighed by the boys’ relationship with the father’s extended family.
Further, the majority does not fully take into account certain of the father’s actions that have necessarily negatively impacted his children. While the father opposed the mother’s relocation request, he was also cast in contempt for failure to pay child support, and found to be $14,900 in arrears. In addition to not fulfilling his | (¡financial obligations to his children, he also failed to fully take advantage of his available visitation with his sons. The record establishes that while the mother has agreed to virtually all of the father’s visitation requests, the father has routinely limited his monthly physical custody of his sons to only four of the fourteen days he is off of work and at home from his job offshore.
Finally, even considering extended family relationships in this case, extended family support is not limited to Lafourche Parish. The record reflects the mother and boys would be living with their maternal aunt in Washington, and would be able to have frequents visits with their maternal grandmother, who lives in Hawaii. The move to Washington state would allow the boys to further develop relationships with their maternal grandmother, aunt and cousins. I see no reason why Andru and Evan should not have the same opportunity to bond with their maternal extended family.